UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBORAH HOWARD-RAULS, | ) | NO. SACV 06-1208 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) | |

Deborah Howard-Rauls filed this action on December 19, 2006. On March 15, 2007, the case was transferred to Magistrate Judge Alicia G. Rosenberg. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on March 26 and August 30, 2007. On October 16, 2007, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands for further proceedings consistent with this Opinion.

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On February 26, 2004, Rauls filed an application for disability insurance benefits. A.R. 69. The Commissioner initially denied the application. A.R. 69. Rauls requested a hearing. A.R. 109. The Administrative Law Judge ("ALJ") conducted a hearing on January 5, 2006, at which Rauls and a vocational expert testified. A.R. 297-320. On April 19, 2006, the ALJ issued a decision denying benefits. A.R. 69-74. On May 15, 2006, Rauls filed a request for review of the ALJ's decision. A.R. 63-65. On December 15, 2006, the Appeals Council denied the request for review. A.R. 6-7. This lawsuit followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

///

# III.

# DISCUSSION

## A. Pertinent Legal Standards

### 1. Definition of Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Rauls had the following severe impairments: neck degeneration and a "crush injury to the right foot." A.R. 74. Rauls had the residual functional capacity to "perform sedentary work generally, with occasional climbing, balancing, stooping, kneeling, crouching and crawling. She can use her right hand frequently but not constantly." A.R. 74. Based on her residual functional capacity, the ALJ found that Rauls could perform her past relevant work as a computer graphic designer. A.R. 74.

## C. Plaintiff's Treating Physician

Rauls first argues that the ALJ did not properly consider the opinion of her treating physician. An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical

///

evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and internal quotation marks omitted).

Rauls submitted additional medical records from her treating physician to the Appeals Council.[1] The Appeals Council considered the records and concluded that the new material "does not provide a basis for changing the Administrative Law Judge's decision." A.R. 56, 58. Given that the Appeals Council addressed the records in the context of denying review, this Court also considers the records. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).

On April 11, 2003, Rauls complained to her treating physician, Dr. Harry Whittaker, of neck pain radiating down her right arm. A.R. 232. Dr. Whittaker referred Rauls to an orthopedist. A.R. 232. On July 15, 2003, Rauls returned to Dr. Whittaker with similar complaints and told him that an orthopedist had recommended an MRI. A.R. 231. On August 26, 2003, Dr. P. Douglas Kiester reported to Dr. Whittaker that x-rays indicated "significant degenerative osteophytes[2] in the cervical spine particularly between C6 and C7 with a large posterior osteophyte at that level." A.R. 220. A physical examination of Rauls revealed "moderate tenderness in the cervical spine with a positive neural foraminal compression test to the right. Brachioradialis reflexes are diminished on the right with weakness on wrist extension and some weakness in the triceps. The patient has diminished sensation over the thumb, index and long fingers in

---

[1] "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b).

[2] An osteophyte is a bony outgrowth. JS 5 n.1.

4

1  the right hand. Reflexes in the lower extremities are slightly elevated. Left upper
2  extremity examination is unremarkable." A.R. 220. Dr. Kiester assessed severe
3  cervical stenosis[3] at C5-6 and moderate cervical stenosis at C6-7. A.R. 220. Dr.
4  Kiester ordered an MRI. A.R. 221.

5  On September 15, 2003, Dr. Saremi Farhood, a radiologist, reported on
6  Rauls' MRI. A.R. 219. He indicated that there was "mild interspace narrowing at
7  C5/C6 and C6/C7." *Id.* He also indicated that there were "posterior disc-
8  osteophyte complexes at the C3/C4, C4/C5, C5/C6, and C6/C7 levels." Finally,
9  he indicated that there was "mild right neural foraminal[4] narrowing at C4/C5,
10  C6/C7, and C7/T1." *Id.*

11  On October 1, 2003, Dr. Kiester reported on the results of the MRI to Dr.
12  Whittaker. A.R. 217. According to Dr. Kiester, the MRI showed "mild stenosis at
13  C3-4 and C5-6 with rather dramatic stenosis at C6-7 and a herniated disc shaded
14  off to the right side and out the right neural foramen at C6-7." *Id.* Dr. Kiester
15  discussed with Rauls her treatment options, including treatment with medication
16  or surgery. *Id.* Of the three surgical options, Dr. Kiester recommended a C6-7
17  anterior discectomy and fusion. *Id.* Rauls planned to consider her options. A.R.
18  218.

19  ///
20  ///
21  ///
22  ///

---

[3] According to Dorland's Medical Dictionary online, "stenosis" is "an abnormal narrowing or contraction of a body passage or opening." (available at http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/seven/000100588.htm).

[4] A foramen is an "aperture or perforation through a bone or a membranous structure." Stedman's Online Medical Dictionary (available at http://activate.lww.com/semdweb/internetsomd/ASP/1519329.asp).

1    On December 19, 2003, Rauls told Dr. Whittaker she wanted to try physical therapy before considering surgery. A.R. 41. Dr. Whittaker noted in subsequent visits that Rauls was averse to surgery.[5] A.R. 44, 46, 48, 50.

On March 4, 2004, Dr. Whittaker completed a "Multiple Impairments Questionnaire." A.R. 205-212. Dr. Whittaker diagnosed severe cervical stenosis C5-6 and moderate cervical stenosis C6-7. In addition, there was "significant degenerative osteophytes in C-spine between C-6-C7 w/a large posterior osteophyte," there was "moderate tenderness in the C-spine w/ a positive neural foraminal compression test to the right," and "diminished sensation over thumb index + long fingers of rt hand." A.R. 205-206.

On September 1, 2006, in medical records submitted after the ALJ's decision, Dr. Whittaker indicated that Rauls "had a car accident Aug. 22, 2006, now having severe neck and back pain." A.R. 54.

The ALJ rejected Dr. Whittaker's opinion as to Rauls' limitations on the basis that it was "unsupported and inconsistent with the substantial evidence of record." A.R. 71. Specifically, the ALJ found that Dr. Whittaker's diagnosis "is a flagrant misstatement of the findings and his assessment is completely unsupported by any actual objective medical findings." *Id.* However, Dr. Whittaker relied on Dr. Kiester's reports which, as discussed above, contained those diagnoses. A.R. 217, 220. Dr. Whittaker referred to the x-rays as the test results that supported his diagnosis. A.R. 206. Therefore, the ALJ's basis for rejecting Dr. Whittaker's Questionnaire was itself not supported by substantial evidence.

///

---

[5] Dr. Kiester stated that the risks of surgery "includ[e] infection, failure of fusion, failure to relieve symptoms and as stated, the progression of degenerative disease at other levels." A.R. 218. At the hearing, Rauls explained that, given the number of surgeries she has had in the past, she would not consent to additional surgery absent a guarantee that it would actually help. A.R. 313.

6

The ALJ rejected Dr. Kiester's reports – which constituted the basis of Dr. Whittaker's diagnosis – solely because the MRI report by Dr. Farhood conflicted with Dr. Kiester's findings. A.R. 71. An ALJ may not reject a treating physician's opinion "without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn*, 495 F.3d at 632 (citation omitted). Here, the ALJ relied solely on the existence of a conflict without stating any legitimate reasons for rejecting Dr. Kiester. The ALJ pointed out that Dr. Farhood's report did not indicate a herniated disc or "dramatic stenosis"; instead, "any narrowing was listed as mild only," and there was "no objective documentation of any disc herniation." The ALJ found that because Dr. Farhood did not indicate a herniated disc, there was "no objective documentation of any disc herniation." A.R. 71.

However, Dr. Kiester, an orthopedic surgeon, was qualified to interpret the MRI independently of Dr. Farhood. The ALJ himself relied upon the interpretation of x-rays by an orthopedic surgeon, Dr. Yu, who observed "cervical spondylosis[6] most severe at C5-6 and C6-7 and to a lesser degree at C3-4 and C4-5." A.R. 71, 239. Dr. Kiester was a treating physician, whereas Dr. Farhood was not.[7] Dr. Kiester had more opportunities to observe and examine Rauls. Dr. Kiester had the benefit of reviewing the x-rays, whereas Dr. Farhood did not. Dr. Kiester's

///

---

[6] Cervical spondylosis is a "disorder caused by abnormal wear on the cartilage and bones of the neck (cervical vertebrae) with degeneration and mineral deposits in the cushions between the vertebrae (cervical disks)." Merck's Online Encyclopedia (available at http://www.mercksource.com/pp/us/cns/cns_hl_adam.jspzQzpgzEzzSzppdocszSzuszSzcnszSzcontentzSzadamzSzencyzSzarticlezSz000436zPzhtm).

[7] There is no indication in the record that Dr. Farhood did anything except review the MRI pictures and file a report. There is no indication that he personally saw or examined Rauls. *See Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994) ("We have accorded deference to treating physicians precisely because they are the doctors with 'greater opportunity to observe and know the patient.'") (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1993)).

description of the herniated disk ("shaded off to the right side") may have meant it was difficult to see on the MRI.

Moreover, the ALJ's use of the phrase "objective documentation" was inconsistent with the regulations. Dr. Farhood's and Dr. Kiester's reports were equally "objective" as defined in the regulations.[8] The only actual laboratory findings were the MRI pictures themselves. *See* 20 C.F.R. §§ 404.1528(c) and 416.928(c).

Accordingly, the ALJ's reasons for rejecting Dr. Kiester's findings were not supported by substantial evidence. *See Orn*, 495 F.3d at 631-32 ("'[A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.") (quoting from Social Security Ruling 96-2p[9]).

The ALJ further rejected Dr. Whittaker's opinion as to the weakness in Rauls' right hand because it was not supported by any objective findings.[10] A.R. 71. However, Dr. Kiester's reports sent to Dr. Whittaker indicated "diminished sensation along her long finger, as well as weakness with wrist flexion on the

---

[8] "Objective medical evidence" means "medical signs and laboratory findings." 20 C.F.R. § 404.1529(a). "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b).

[9] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (citation and footnotes omitted).

[10] The ALJ's statement that "Dr. Whittaker is full of contradictions" is unsupported. A.R. 71. Dr. Whittaker indicated no tenderness in the joints, but there was tenderness in the paravertebral muscles. A.R. 213. Paravertebral muscles are muscles "[a]longside a vertebra or the vertebral column." Stedman's Online Medical Dictionary (available at http://activate.lww.com/semdweb/internetsomd/ASP/1549085.asp).

right side." A.R. 217. "Brachioradialis reflexes are diminished on the right with weakness on wrist extension and some weakness in the triceps. The patient has diminished sensation over the thumb, index and long fingers in the right hand." A.R. 220. Accordingly, the ALJ's rejection of Dr. Whittaker's limitations was not supported by substantial evidence.

Because the ALJ's rejection of Dr. Whittaker was not supported by substantial evidence, his opinion must be credited as a matter of law. *See Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006). Based on Dr. Whittaker's limitations as to Rauls' hand, the vocational expert testified that Rauls could not perform her past relevant work as a computer assisted graphic designer. A.R. 74, 317-318. However, Dr. Whittaker's opinion as to Rauls' sitting/standing limitations are unclear. For example, Dr. Whittaker indicates that Rauls can sit and stand for 0-1 hours per eight-hour day, but states that Rauls must alternate every 20 minutes, thus suggesting that the 0-1 hour limitation is a limit on continuous sitting or standing/walking. A.R. 207-208.

Accordingly, this case is remanded for further proceedings at Step Five of the sequential analysis. At Step Five, the Commissioner bears the burden of demonstrating that there is other work in "significant numbers" in the national economy that the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

### D. Plaintiff's Subjective Complaints

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36.

#### 1. Legal Error at Step One of the Credibility Analysis

The ALJ's decision contains legal error at step one of the credibility analysis. At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

The ALJ concluded that "the claimant has not established a medically determinable impairment which would reasonably be expected to produce such limitations." A.R. 72. First, "the ALJ erroneously focused on whether the causal relationship was medically determinable through scientific studies, instead of whether it was reasonable to expect such a relationship." *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996) (citations omitted); *see Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) ("We have never required that the medical evidence identify an impairment that would make the pain inevitable."). Second, the ALJ erred in focusing on whether Rauls' impairments could have caused the severity of her symptoms. *Smolen*, 80 F.3d at 1283.

As discussed above in part III.C., Rauls has produced evidence of impairments that could reasonably be expected to cause some pain. The ALJ erred in requiring objective medical evidence that the impairments caused the severity of the pain. *See Moisa v.* Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (ALJ erred in rejecting pain testimony solely for lack of objective medical evidence corroborating it); *Smolen*, 80 F.3d at 1283 (ALJ erred in requiring objective medical evidence to establish causal relationship between impairment and pain).

///

///

## 2. Step Two of the Credibility Analysis

"Second, if the claimant meets this first test, and there is no evidence of malingering,[11] 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ found that Rauls' allegations "are not totally credible." A.R. 74. The ALJ relied primarily on the absence of objective medical evidence.[12] A.R. 72. However, the ALJ's finding is not supported by substantial evidence as discussed in part III.C.

Remand is appropriate so that the ALJ may reassess Rauls' credibility, apply the correct legal standards, and make the required findings. *Bunnell v. Barnhart*, 336 F.3d at 1115-16 (9th Cir. 2003).

///

///

///

///

---

[11] The ALJ did not find that Rauls was a malingerer.

[12] The ALJ's statement that the radiographs have shown only mild to moderate findings is unsupported by the record. The radiographs, which were not in the record, were interpreted by the doctors. There may be a conflict between Dr. Kiester and Dr. Farhood's interpretations of the MRI. Such a conflict does not exist with respect to the x-rays (taken before the MRI) as there is nothing to indicate that Dr. Farhood reviewed the x-rays.
It is not clear what radiographs Dr. Yu interpreted (Dr. Yu is the consulting physician engaged by the California Department of Social Services who examined Rauls on June 6, 2004) as he indicated only that he reviewed "[a]ll submitted medical records" without specifying which ones. A.R. 239. Dr. Yu's findings were relied on by the ALJ. A.R. 71-72.

11

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the matter is remanded for further proceedings as to Step Five of the sequential analysis consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 4, 2008

　　　　　　　　　　　　　　　　　／s／ Alicia G. Rosenberg
　　　　　　　　　　　　　　　　　ALICIA G. ROSENBERG
　　　　　　　　　　　　　　　　　United States Magistrate Judge